IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CONSTRUCTION RESEARCH & TECHNOLOGY, GmbH, et al., | ) ) ) | CASE NO.  1: 05 CV 1003 |
| Plaintiffs, | ) ) | |
| v. | ) ) | JUDGE DONALD C. NUGENT |
| THE EUCLID CHEMICAL COMPANY, | ) ) | MEMORANDUM OPINION AND ORDER |
| Defendant. | ) | |

This matter is before the Court on a Motion for Summary Judgment and Motion for

Reconsideration filed by Defendant The Euclid Chemical Company.  (ECF # 45.)  For the reasons set

forth below, the disputed claim terms are construed in the manner set forth in the Court's previous

Memorandum Opinion and Order (ECF # 44), the Motion for Summary Judgment is DENIED, and the

Motion for Reconsideration is DENIED.

## I. BACKGROUND

This Court previously set forth the background relevant to this case in the Memorandum

Opinion and Order issued on June 7, 2006, subsequent to the Markman hearing.  (ECF # 44.)  For

reference in this Memorandum Opinion and Order, the Court again sets forth the applicable

background below, followed by an explanation of the instant Motions.

### A. Plaintiffs' Claims and Defendant's Counterclaims

In April 2005, Construction Research & Technology, GmbH ("Construction Research"),

Degussa Construction Chemicals, Inc. ("Construction Chemicals"), and Degussa Admixtures, Inc.

("Degussa Admixtures") (collectively "Plaintiffs") filed a four-count Complaint against Defendant in this

Court.  (ECF # 1.)  According to the Complaint, Construction Research is the sole owner and assignee of the two patents at issue in this lawsuit (the "patents-in-suit").  The first patent is United States Patent No. 6,267,814, which is entitled CEMENTITIOUS DRY CAST MIXTURE ("the '814 patent"), and the second patent is United States Patent No. 6,461,425, which is also entitled CEMENTITIOUS DRY CAST MIXTURE ("the '425 patent").  (*Id.* at ¶¶ 10-16.)  The Complaint states that Construction Research licensed the '814 and the '425 patents to its affiliate, Construction Chemicals, which in turn sublicensed the patents to Degussa Admixtures.  (*Id.* at ¶¶ 17-18.)

> The Complaint provides the following explanation concerning cementitious dry cast mixtures:
>
> Cementitious dry cast mixtures are cementitious-based compositions, including, for example, cementitious-based pastes, mortars, and concrete compositions, which include a hydraulic cement binder having consistencies ranging from stiff to extremely dry.  A hydraulic cement binder is a material that, when mixed with water in proper proportions, will undergo hydration reactions and harden.  Cementitious dry cast mixtures are used to form many articles including, for example, concrete block, concrete pipe, roof tiles, masonry units, concrete paver units, extruded plank, and other dry cast cementitious articles in a mold or from an extrusion die.  The terms "dispersant," "plasticizer," and "water reducer" are used interchangeably in the cement additives and admixtures industry to refer to materials that reduce the amount of water needed to hydrate cementitious mixtures.

(*Id.* at ¶¶ 19-22.)  Plaintiffs state that they "have invented cementitious dry cast mixtures and methods that utilize a derivatized polycarboxylate dispersant in order to improve the performance of cementitious dry cast mixtures, including but not limited to, the consolidation of cementitious dry cast mixtures, the inventions being claimed in the '814 patent and the '425 patent."  (*Id.* at ¶ 23.)  Degussa Admixtures markets and sells derivatized polycarboxylate dispersant admixtures for use in cementitious dry cast mixtures throughout the United States.  (*Id.* at ¶ 25.)

> Plaintiffs allege that Defendant "sold in the past, offered for sale in the past, currently offers for

sale, and currently sells derivatized polycarboxlyate dispersant admixtures for cementitious dry cast mixtures under the trade designation EUCON DC to customers throughout the United States." (*Id.* at ¶ 26.) Plaintiffs contend that, "[a]ccording to a chemical analysis of the EUCON DC polycarboxylate admixture obtained by Plaintiffs, the admixture contains a derivatized polycarboxlyate dispersant of the structure claimed by at least claim 1 of the '814 patent and at least claim 1 of the '425 patent." (*Id.* at ¶ 29.)

In Count I, Plaintiffs attempt to bring a claim of Contributory Infringement of the '814 patent, asserting that Defendant actively induces and contributes to the infringement of the '814 patent through customers who buy and use EUCON DC. (*Id.* at ¶¶ 31-40.) In Count II, Plaintiffs allege Inducement of Patent Infringement under the '814 patent, claiming that, "[t]hrough its advertising, marketing, promoting, offering for sale, and selling of its EUCON DC polycarboxylate admixture, [Defendant] has in the past actively induced and is currently actively inducing its customers in the cementitious dry cast products industry to directly infringe the '814 patent." (*Id.* at ¶ 45.) In Count III of the Complaint, Plaintiffs attempt to bring a claim of Contributory Infringement of the '425 patent. (*Id.* at ¶¶ 52-61.) Finally, in Count IV, Plaintiffs attempt to state a claim of Inducement of Patent Infringement under the '425 patent. (*Id.* at ¶¶ 62-72.) Based on Counts I through IV, Plaintiffs seek the following relief:

(A) An injunction preliminarily and permanently restraining and enjoining [Defendant] and its officers, agents, parents, affiliates, related companies, servants, employees, and all of those acting [sic] concert or participation with any of them from contributing to the infringement of the '814 and '425 patents;

(B) An injunction preliminarily and permanently restraining and enjoining [Defendant] and its officers, agents, parents, affiliates, related companies, servants, employees, and all of those acting [sic] concert or participation with any of them from inducing infringement of the '814 and '425 patents;

(C) A judgment declaring that [Defendant] has contributed to the infringement of the '814 and '425 patents by others;

(D) A judgment declaring that [Defendant] has induced the infringement of the '814 and '425 patents by others;

(E) A judgment declaring that [Defendant] has willfully contributed to the infringement of the '814 and '425 patents by others;

(F) A judgment declaring that [Defendant] has willfully induced the infringement of the '814 and '425 patents by others;

(G) An accounting and an award of damages to Plaintiffs against [Defendant] in an amount adequate to compensate Plaintiffs for [Defendant]'s inducement of infringement of the '814 and '425 patents and/or contribution to the infringement of the '814 and '425 patents, together with prejudgment interest thereon;

(H) A trebling of the damages found or assessed as a result of [Defendant]'s deliberate and willful inducement of infringement of the '814 and '425 patents and/or deliberate and willful contribution to the infringement of the '814 and '425 patents;

(I) A finding that this is an exceptional case under 35 U.S.C. § 285, thereby warranting an award to Plaintiffs against [Defendant] of Plaintiff's costs of this action and reasonable attorney's fees; and

(J) Such further relief as the Court may deem just and proper.

(*Id.* at 12-13.)

Defendant filed its Answer, Affirmative Defenses, Counterclaims, and Demand For Jury Trial. (ECF # 16.)  In that pleading, Defendant denied all material allegations in Plaintiffs' Complaint, and asserted two counterclaims.  In its First Counterclaim, Defendant seeks a declaration of invalidity of the '814 patent and the '425 patent.  (*Id.* at ¶¶ 10-12.)  In its Second Counterclaim, Defendant seeks a declaration of non-infringement of the '814 patent and the '425 patent.  (*Id.* at ¶¶ 13-15.)  In its prayer for relief, Defendant asks that:

A. Plaintiffs' Complaint be dismissed in its entirety and with prejudice, with Plaintiffs taking nothing.

B. This Court enter a judicial determination of the rights and responsibilities of the parties and enter a decree to the effect that:

      1.      [Defendant] has not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '814 Patent and [Defendant] is entitled to use and sell its accused product without any threats, intimidation or other interference by or from Plaintiffs;

      2.      [Defendant] has not infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '425 Patent and [Defendant] is entitled to use and sell its accused product without any threats, intimidation or other interference by or from Plaintiffs;

      3.      The '814 Patent is invalid, void and of no effect in law;

      4.      The '425 Patent is invalid, void and of no effect in law; and

      5.      The Counterclaims are exceptional under 35 U.S.C. § 285.

C. This Court enjoin Plaintiffs as well as Plaintiffs' officers, agents, servants, employees, attorneys, representatives, distributors, and all other persons in active concert or participation with Plaintiffs from stating, implying or otherwise communicating to others that [Defendant] or its customers have infringed, contributed to the infringement of, or induced infringement of either the '814 Patent or the '425 Patent.

D. [Defendant] recover from Plaintiffs its damages, fees and costs, including but not limited to its reasonable attorneys' fees under 35 U.S.C. §§ 284 and 285.

E. [Defendant] be awarded such other relief as the Court deems just and proper.

(*Id.* at 12-13.)  Plaintiffs filed a Reply Response to Defendant's Counterclaims.  (ECF # 18.)

## B. The Markman Briefs

Plaintiffs filed a Markman Brief In Support of Their Proposed Claims Construction.  (ECF # 24.)  In their brief, Plaintiffs provided the following overview of their construction of the disputed claim

terms:

> The claims construction issues fall into three general groups. The first group of disputes relate to the meaning of individual words or phrases contained in the claims. The second group of disputes relate to the claimed range of chemical structures of the polymer dispersant. With respect to the second group, all disputes arise from [Defendant] attempting to unduly limit the scope of the claims to specific molecules, rather than to classes of molecules or mixtures of molecules as recited in the claims and supported by the written specification. The third group relates to claim listings of optional components of the cementitious dry cast mixture. However, all of the disputes have one common theme, [Plaintiffs'] claims constructions are **open-ended** to be consistent with the claims and specifications, while [Defendant's] are **closed-ended**, seeking to place narrow restrictions on the Patents-in-Suit that cannot be found in the language of the claims or the specifications, and would make no sense to a person ordinarily skilled in polymer chemistry, as they do not describe real world polymerization reactions.

(*Id.* at 13 (emphasis in original).) Plaintiffs then set forth in detail their open-ended claim construction,

and the purported basis upon which the Court should adopt their proposed claim construction. (*Id.* at

13-41.)

On the same day, Defendant filed its Initial Claim Construction Brief. (ECF # 25.) Defendant

contended that "each and every claim" of the '814 patent and the '425 patent contains "errors that must

be corrected as a part of the Court's claim construction." (*Id.* at 1.) Defendant explained these alleged

errors as follows:

> These claims define the general chemical structure of a dispersant using a chemical formula having a number of variables like X, Y, R and Z. The variables are further defined by a listing of chemical components (e.g., "X=H, $Ch_3$, $C_2$, to $C_6$ Alkyl, Phenyl, Substituted Phenyl such as p—Methyl Phenyl, Sulfonated Phenyl"). This listing of chemical components is known in patent parlance as a "Markush group" or "alternative expression."
>
> Markush groups or alternative expressions are patent terms of art having a legally-accepted format and scope. In this regard, under the patent laws, a Markush expression can be claimed as "R is a member *selected from the group consisting of* A, B, C *and* D." Similarly, rather than use the "selected from the group consisting of" language and the conjunction "and" prior to the last member of the group, it is also proper to claim the

alternative expression as "wherein R is A, B, C, *or* D."  As to scope, claims containing a Markush group or alternative expression are construed so that only one chemical component can be plugged into the chemical formula to make the chemical structure, unless qualifying language is added expressly stating that mixtures of the chemical components can be plugged into the chemical structure.

\* \* \*

The variables defined in all of the [Plaintiffs'] Patents are not in a format accepted by the United States Patent and Trademark Office ("USPTO")—there is no "or" prior to the last member of the group.  In [Plaintiffs'] claims, R is A, B, C, D (in contrast to A, B, C or D).  This is not a proper format for an alternative expression, because it is patently unclear whether the claim covers one member of the group, two members of the group, mixtures of members of the group or all members of the group.  ***An alternative expression, on the other hand, must be unambiguous with respect to questions of scope and clarity.***

(*Id.* at 1-3) (internal citations and footnotes omitted) (emphasis in original).)  Defendant asserted that, under the relevant law, this Court cannot correct the errors in Plaintiffs' claims.  (*Id.* at 3.)  As such, Defendant argued that "the Court cannot construe these claims and must hold that every claim of [Plaintiffs'] patents is invalid as being indefinite under 35 U.S.C. § 112, ¶ 2."  (*Id.*)  Hence, according to Defendant, the Court should hold that all of the claims are invalid, the patents-in-suit are thus invalid, and this case be dismissed in its entirety.  (*Id.*)

Alternatively, Defendant argued that, if the Court did not find the patents to be invalid and determined that the disputed claim terms were amenable to construction, the Court should adopt Defendant's claim construction.  (*Id.* at 4.)  According to Defendant, it sought "a construction in line with the legally-recognized scope of an alternative expression — i.e., the claims only cover one member of the group, not combinations of the members or all of the members of the group unless qualifying language is present."  (*Id.*)  Defendant also set forth its claim construction for specific words and

phrases in the patents-in-suit, and provided the alleged basis upon which the Court should adopt its construction.  (*Id.* at 16-30.)

Plaintiffs filed a Reply Brief to Defendant's Markman Brief.  (ECF # 30.)  In their brief, Plaintiffs argued that Defendant erroneously insisted on closed-claims constructions for the claim terms, that would exclude combinations of atoms and chemical groups.  (*Id.* at 6.)  Plaintiffs contended that the intrinsic evidence of record mandates that the "claim terms are open-ended and may comprise of combinations of recited and unrecited atoms and/or chemical groups."  (*Id.* at 6-7.)  Accordingly, Plaintiffs' position is that the claims of the patents-in-suit are valid and do not require correction in order to conduct claims construction analysis.  (*Id.* at 7.)

On the same day, Defendant filed its Opposition to Plaintiffs' Markman Brief In Support Of Their Proposed Claims Construction.  (ECF # 29.)  Defendant maintained that Plaintiffs' proposed construction is indefinite under 35 U.S.C. § 112, ¶ 2, because it is limitless and fails to provide guidance to third-parties as to the scope of the claims.  (*Id.* at 2.)  Defendant states that Plaintiffs seek "to impermissibly broaden the scope of its claims by proffering a construction covering combinations of group members[,] even though the requisite qualifying language is nowhere to be found in its claims." (*Id.* at 3.)  Based on its position that Plaintiffs' claims and claim constructions are invalid under the applicable law, Defendant urged this Court to dismiss this case.  (*See id.*)  In the alternative, Defendant urged this Court to adopt its claims analysis.  (*Id.* at 3-15.)

## C. The Markman Hearing

### 1. Opening Statements

In his opening statement at the Markman hearing in this matter, counsel for Plaintiffs stated that

-8-

the issue before the Court is "simply whether the patents as written are understood by someone of ordinary skill in the industry to encompass open groups or closed groups, meaning can you have any one of among many particular elements on a molecule, and can each molecule be different so long as it fits the description, each molecule in a combination of molecules."[1]  (ECF # 40 at 3.)  Plaintiffs' counsel gave an example of this, stating:

> The claim here, and X equals, okay then we have hydrogen, comma, and we have a methyl group, and you have an ethyl, all these different kids of organic chemicals we don't need to trip our tongues on, but it's comma, comma, comma, comma.  And we say, as any organic chemist or polymer chemist knows, that it can be any one of them period.  It can be any one of them and any molecule.  And each unit of the same molecule, the next unit in the chain can be different.

(*Id.* at 27.)  Plaintiffs claimed that there was no error in drafting the patents-in-suit, and that Defendant's argument concerning Markush groups is misplaced.  (*Id.* at 30, 37.)  To that end, Plaintiffs' counsel argued:

> We're not trying to be a Markush group.  We're not improper, proper or otherwise.  We're not a Markush group.  We're not closed, we're open.  It's an open description.  So we didn't try to make a Markush group and didn't get it right.  We had no intention of making a Markush group, and it's not.

(*Id.* at 30-31.)  Therefore, Plaintiffs asserted that the patents-in-suit, as written, properly contain open descriptions for polymers, which are "either/or, or combinations thereof."  (*Id.* at 31.)

In Defendant's opening statement, counsel stated that "the asserted claims are insolubly ambiguous and cannot be construed by the Court at all, and as such, they're invalid."  (*Id.* at 39.)  Defendant's counsel defined the issues as whether certain symbols contained in the molecule are

---

[1]  Counsel for Plaintiffs also made a brief argument concerning the proper meaning of individual words or phrases contained in the claims, such as construction of the terms "cementitious dry cast mixture" and "dispersant." (ECF # 40 at 21-22.)

indefinite Markush-type groups, whether the symbols are closed, and whether the symbols cover

combinations of identified alternative atoms or chemical groups.  (*Id.* at 40.)  Defendant's counsel

provided the following analogy in attempting to demonstrate the purported errors in the patents-in-suit:

> [I]f I were to be handed an apron and a recipe and told to make a nut bread in the kitchen, and I looked at the recipe, and the recipe said it consists of five ingredients we're going to call A, B, C, D, and E, and I look at the recipe and it says A equals sugar, comma, NutraSweet; B equals baking soda, comma, baking powder; C equals flour, comma, ground meal; D equals nutmeg, comma, allspice; E equals pecans, comma, walnuts.  And I look at that recipe, and I say to myself, where do I go from here?  With respect to A, is it sugar or is it NutraSweet, or is it both that I'm supposed to put in this recipe?
>
> With respect to the nuts, is it pecans or walnuts, or both?  How do I know?  I don't know.  And that's the issue that's presented by the claims of [Plaintiffs] in this case.
>
> We have alternatives that are given for the letters X, Z, M, R$_1$, et cetera, but there is no identification of what we're to do with these things because they're construed in a fashion, my able counsel noted to the Court, they're comma, comma, comma, comma claims.  X is something, comma, something, comma, something, comma.
>
> What does that mean?  Does it mean it's alternately one or the other?  Does it mean you put them all together?  Where do you go?  And for that reason, we believe that these claims are insolubly ambiguous.  One of ordinary skill in the art can't figure out from reading the patent and reading the claims where this thing goes.

(*Id.* at 41-42.)  Defendant's counsel stated that there are only two acceptable ways to claim alternative

limitations, which are "X is selected from the group consisting of A, B, C, and D" or "R is A, B, C, or

D," and Plaintiffs failed to use either of those methods.  (*Id.* at 45.)  In sum, Defendant's counsel

contended that the patents-in-suit are invalid, in that they fail to disclose how to make the

polycarboxylate, and the parameters that are to be used in manufacturing the polycarboxylate.  (*Id.* at

57.)  Alternatively, Defendant's counsel argued that, if the Court ultimately decides to construe the

claims, it must do so "in a manner that makes them closed."  (*Id.* at 49.)

### 2. The Evidence

In support of their position, Plaintiffs first called Thomas Vickers, a chemist and an inventor of one of the two patents-in-suit, as a witness.  (*Id.* at 59, 63-66.)  Mr. Vickers testified as to his understanding of the meaning of individual words or phrases contained in the claims, namely the construction of the terms "cementitious dry cast mixture" and "dispersant."  (*Id.* at 71-75.)  Mr. Vickers also testified that various articles in the literature relating to polycarboxylate cement dispersants demonstrate that the descriptions of the variables in the patents-in-suit are not unusual, and that the information provided would allow him to build a whole range of molecules.  (*Id.* at 76-83.)

Upon the completion of the testimony of Mr. Vickers, Plaintiffs called another chemist, Dr. David Schiraldi, to testify.  (*Id.* at 99.)  Dr. Schiraldi is an Associate Professor of Macromolecular Science and Engineering at Case Western Reserve University, with a background in polymers.  (*Id.* at 102.)  On direct examination, Dr. Schiraldi testified that the "recipe" for the polymer dispersant in the patents-in-suit provides sufficient information from which he would know how to make the molecule described.  (*Id.* at 116-17.)  He explained that, although the recipe could result in tens of thousands of different potential polymers, such a result is not unusual.  (ECF # 38 at 139-40.)  Dr. Schiraldi stated that, "[t]here are a lot of patents that have thousands or tens of thousands of compositions covered." (*Id.* at 140.)

In opposition, Defendant's first witness was Dr. Donald Feke, an expert in colloidal and particulate systems and the use of polymer dispersants in those systems.  (*Id.* at 167, 174.)  Dr. Feke has several faculty appointments at Case Western Reserve University, and also serves in administration as Vice Provost for Undergraduate Education.  (*Id.* at 168.)  Dr. Feke testified that, as written, the

-12-

patents-in-suit allow for the selection of only one of the variables to be plugged into the formula to form the dispersant.  (*Id.* at 178.)  Dr. Feke stated, "[i]f you want a monomeric unit that would impact a specific function to the dispersant," you could not select mixtures of chemical groups for use in the dispersant.  (*Id.*) To the contrary, Dr. Feke instructed that "you would select one choice for the individual variables."  (*Id.*)

Dr. Feke further testified that, based on the information in the patents-in-suit as well as the incorporated patents, he could not make the polycarboxylate at issue.  (*Id.* at 219-20.)  Dr. Feke stated that he would need additional information in order to build that structure.  (*Id.* at 220-22.)  In particular, Dr. Feke stated, "Coming from a point of view of a dispersant[,] trying to read the recipe and come up with a product, there is not enough in here for me to do that."  (*Id.* at 220-21.) According to Dr. Feke, he would need extrinsic information, not provided in the patents-in-suit, in order to build the structure.  (*Id.* at 221.)

Upon the conclusion of Dr. Feke's testimony, Defendant next called Patrick Hagan as a witness.  (*Id.* at 226.)  Mr. Hagan has an undergraduate degree in chemistry from Villanova University, and a law degree from American University.  (*Id.* at 228.)  He is currently a partner at the law firm of Dann, Dorfman, Herrell & Skillman in Philadelphia, Pennsylvania, where he has practiced primarily in patent law since 1978.  (*Id.* at 227.)

From 1972 to 1974, Mr. Hagan was a Junior Patent Examiner in the Organic Chemistry Group of the United States Patent and Trademark Office.  (*Id.* at 229.)  Mr. Hagan testified that his duties as a Patent Examiner were to:

Review patent applications to determine whether they satisfied the  statutory requirement

-13-

for patentability, conduct searches of the prior art, write office actions, which set forth [his] determinations of patentability on the claims of patent applications that were assigned to [him] to examine, [and] confer with [his] supervisor from time to time to discuss particular issues of patentability.

(*Id.* at 230.)  Mr. Hagan stated that, as a Patent Examiner, he was exposed to Markush claims in patent applications.  (*Id.*)

Mr. Hagan explained alternative limitations as having to do with "situations in claims where there is a recitation of specific claim elements that can be used interchangeably to achieve the purpose of the claimed invention."  (*Id.* at 233.)  He testified that:

> There was a time many years ago when the Patent Office had a general rule prohibiting the use of alternative language in claims, and over the years, that rule was relaxed because it was concluded that it was unfair to penalize applicants due to the limitations of the English language, and consequentially, the Patent Office adopted certain practices that allowed applicants to use alternative claim language.
>
> One of these practices came to be known as the Markush practice, which was named after the case where the practice was approved of which was ex parte Markush, and another practice developed around the use of symbolic definitions of chemical substituents in chemical structures, in claims, which has been described in shorthand notation as "or terminology."

(*Id.* at 234.)  Mr. Hagan testified that the claims in this lawsuit appear to be "or terminology claims," in that "[t]hey have a similarity to what you would expect, what you would normally see as or terminology claims, but they don't use the term 'or' at the end."[2]  (*Id.* at 237-38.)  When asked how these claims "[got] by" the Patent Examiner without the prescribed language for alternative limitations, Mr. Hagan testified that he "assume[d] that it was due to an oversight on the part of the Examiner."  (*Id.* at 238.)

### D. The Supplemental Briefs

---

[2]  Mr. Hagan explained that the language that the United States Patent Office has accepted for "or terminology" claims is, for example, " X stands for 'or' is a, b, or c."  (ECF # 38 at 237.)

After the Markman hearing, the parties filed supplemental briefs. In their Post-Markman Hearing Memorandum, Plaintiffs reiterated their position that the patents-in-suit are valid. (ECF # 43 at 5.) Plaintiffs first argued that 35 U.S.C. § 112 requires only that the specifications of the patents-in-suit enable one of ordinary skill in the art to make and use a cementitious dry cast mixture using the ingredients set forth in the claims, and the statute does not require that the specifications enable one of ordinary skill in the art to make and use the ingredients themselves, such as the polymer dispersant. (*Id.* at 5-6.) On this basis, Plaintiffs argued that Dr. Feke's testimony that the patents-in-suit contain insufficient information to make the polymer dispersant is irrelevant and should be disregarded. (*Id.* at 6.) Nevertheless, Plaintiffs also argued that the incorporation of other patents into the patents-in-suit indeed enable one with ordinary skill in the art to make and use the polymer dispersant. (*Id.* at 6-13.)

Plaintiffs likewise provided argument concerning specific claim constructions. (*Id.* at 13.) In doing so, Plaintiffs maintained that the patents-in-suit were not intended to contain Markush groups. (*Id.*) To the contrary, Plaintiffs asserted that:

> the Patents-in-Suit claim a polymer dispersant having multiple variations of b monomers and/or combinations of a, c or d monomers with b monomers. Such variations are made possible by [Plaintiffs'] use of the **open ended** alternative expression "___ = ___, ___, ___" which allows the a, b, c, and d monomers to have different variables at the M, R, $R_1$-$R_5$, X, Y, and Z positions.

(*Id.* (emphasis in original).) Thus, Plaintiffs contended that Defendant's arguments and evidence concerning Markush terminology are not relevant. (*Id.*) Plaintiffs also argued that the Court should adopt its definitions for the disputed claim terms, which include "cementitious dry cast mixture," "dispersant," and others. (*Id.* at 19-20.)

Defendant's Supplemental Markman Briefing only addressed the issue of the construction of the

variables M, R, R₄, X, Y, and Z in the formula of the polycarboxylate dispersant.[3]  (ECF # 42 at 1.)  In

doing so, Defendant contended that "its position on the claim construction of the polycarboxylate

formula (i.e., that *one chemical group is selected for each of the variables*)" necessarily follows

from the law and the factual evidence presented at the hearing.  (*Id.* (emphasis in original).)

Defendant's position was based on its argument that the variables are Markush-type expressions, and

they should be construed as such.  (*Id.* at 2-5.)

### E. The June 7, 2006 Memorandum Opinion and Order

On June 7, 2006, this Court issued a Memorandum Opinion and Order, finding that, as

proposed by Plaintiffs, the disputed claim terms are open-ended and should be construed as such.

(ECF # 44 at 20.)  In doing so, the Court noted that, although it had been faced with a difficult question

of claim construction on which the expert witnesses disagreed in several respects, the patents-in-suit are

presumed to be valid.  (*Id.*)  Because the law instructs this Court to interpret claims that are amenable

to more than one construction so as to preserve their validity, the Court held that Defendant's argument

that each claim of the patents-in-suit is invalid as being indefinite under 35 U.S.C. § 112, ¶ 2 is not well

taken.  (*Id.*)  As such, based upon the record before it, the Court found that Defendant failed to present

clear and convincing evidence that the claims at issue are indefinite.  (*Id.*)  The Court further found that

Plaintiffs' construction of the disputed claim terms is supported by the evidence, and therefore adopted

Plaintiffs' claim construction language as its own. (*Id.* at 20-21.)

---

[3] As to all other claim construction issues, Defendant refers the Court to its Initial Claim Construction Brief
(ECF # 25) and its Opposition to Plaintiffs' Markman Brief In Support Of Their Proposed Claims Construction (ECF #
29).  (ECF # 42 at 1, n.1.)

**F. The Instant Motions**

On June 21, 2006, Defendant filed the Motion for Summary Judgment and Motion for

Reconsideration.  (ECF # 45.)  In the Memorandum in Support of the Motions, Defendant argues:

> There is no basis in law for an open-ended alternative expression in a formula claim
> like the one at issue here.  Open-ended alternative expressions in a formula claim are
> indefinite under 35 U.S.C. § 112, ¶ 2, because the format presents ambiguity and
> uncertainty as to scope and clarity.  Accordingly, [Defendant] seeks summary judgment
> on the basis of invalidity under 35 U.S.C. § 112, ¶ 2 in view of the Court's claim
> construction.
>
> In the alternative, [Defendant] seeks a reconsideration of the Court's Markman
> Ruling and asks that the Court simply add an "or" to the various groups defined by to [sic]
> the M, R, R₄, X, Y, and Z Symbols and hold that such Symbols are closed alternative
> expressions.  This modification of the Markman Ruling would create a construction of the
> Patents-In-Suit that is consistent with [Plaintiffs'] own patent filings that involve and
> address the identical formula now at issue.

(ECF # 46 at 3-4.)  Defendant asserts that, in adopting Plaintiffs' claim construction language, the

Court has "in effect redrafted" the claims.  (*Id.* at 8.)  Defendant states that "the Court has gone far

beyond the validity presumption and essentially rewritten the Patents-In-Suit in a manner inconsistent

with 35 U.S.C. § 112, ¶ 2."  (*Id.* at 9.)  On this basis, Defendant requests a ruling in its favor.  (*Id.*)

On July 28, 2006. Plaintiffs filed a Memorandum in Opposition to the Motion for Summary

Judgment and the Motion for Reconsideration.  (ECF # 51.)  In response, on August 28, 2006,

Defendant filed a Reply Brief in support of its Motions.  (ECF # 55.)  As such, the Motions have been

briefed fully and are now before the Court for consideration.

**II. STANDARD OF REVIEW**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R.

Civ. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving

party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the
> district court of the basis for its motion, and identifying those portions of 'the pleadings,
> depositions, answers to interrogatories, and admissions on file, together with affidavits, if
> any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is

"material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires

consideration of the applicable evidentiary standards.  The court will view the summary judgment

motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not

establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th

Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the

jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)

(citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not

"significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*,

477 U.S. at 249-50 (citations omitted).  In most civil cases involving summary judgment, the court must

decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving

party] is entitled to a verdict."  *Id*. at 252.  However, if the non-moving party faces a heightened burden

of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.  *Id.* at 249.  The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  It is with this standard in mind that the Motion for Summary Judgment must be decided.

With respect to the Motion for Reconsideration, such a request is generally only appropriate: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice." *Sherwood v. Royal Ins. Co. of Am.*, 290 F. Supp.2d 856, 858 (N.D. Ohio 2003).  Hence, a motion for

-20-

reconsideration is not a mechanism that unhappy litigants may use to re-litigate issues previously

decided by the court.  *See id.*  As such, a motion for reconsideration is not a substitute for an appeal.

*See id.*

### III. DISCUSSION

According to Defendant, the question before this Court is whether the claims at issue present a

level of uncertainty that is permissible.  (ECF # 55 at 2.)  Defendant submits that the uncertainty and

ambiguity necessarily found in the claims renders them indefinite under 35 U.S.C. § 112, ¶ 2.  (*Id.*)

Hence, Defendant advances the same argument that it made before the Court at the Markman hearing,

but it attempts to cast it in a new light by stating that this Court's "redrafting" of the claims creates the

ambiguity.  (ECF # 46 at 10-12.)  Simply put, Defendant argues that this Court improperly redrafted

the claims in Plaintiffs' favor, thereby undermining the purpose of the definiteness requirement.  (*Id.*)

As this Court addressed in its previous Memorandum Opinion and Order, the statute relied

upon by Defendant, namely 35 U.S.C. § 112, ¶ 2, provides that "[t]he specification shall conclude with

one or more claims particularly pointing out and distinctly claiming the subject matter which the

applicant regards as his invention."  A claim cannot be held to be indefinite simply because it poses a

difficult issue of claim construction.  *See Exxon Research and Eng'g Co. v. United States*, 265 F.3d

1371, 1375 (Fed. Cir. 2001).  To the contrary, a patent is presumed to be valid, 35 U.S.C. § 282, and

a party challenging the validity of a patent must prove the invalidity by clear and convincing evidence,

*see Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370, 1377 (Fed. Cir. 1999).

Heightened evidentiary burdens such as the clear-and-convincing evidence standard of proof

must be taken into account in ruling on summary judgment motions.  *See Anderson*, 477 U.S. at 254.

-21-

The Court considered whether Defendant was able to establish invalidity by clear and convincing evidence in its June 7, 2006 Memorandum Opinion and Order, and found that Defendant had failed to satisfy that burden.  (ECF # 44 at 20.)  The Court finds no reason to depart from that determination in ruling on the Motions presently before it.

Defendant's argument as to why it is entitled to a different ruling at this juncture is generally based on its position that Plaintiffs' "later-filed [patent] applications evidence that [Plaintiffs have] corrected these expressions at the USPTO in a manner consistent with [Defendant's] proposed claim construction."  (ECF # 46 at 13.)  More specifically, Defendant states that, in a number of patent applications, the polycarboxylate dispersant formula claimed in the patents-in-suit has been changed, following an objection by a patent examiner to a claim containing the identical formula.  (*Id.*)  Because the subsequently-filed applications add an "or" prior to "the last member of the group defining the M, $R_4$, X, Y, and Z Symbols," Defendant claims that Plaintiffs intended to claim the alternative expression as "wherein R is A, B, C, or D."  (*Id.*)

Defendant's counsel attempted to introduce evidence to that end at the Markman hearing, through the cross-examination of Thomas Vickers.  (ECF # 40 at 92.)  The relevant testimony includes the following:

> Q.   Okay. But isn't it a fact though, sir, that starting in the latter part of 2002, you changed the way in which are claiming the polycarboxylate that's the subject of this lawsuit?
>
> A.   We have refined that structure over the years.  That's correct.
>
> Q.   Well, in fact, haven't you done more than refine it?  Haven't you put an "or" in your claims so that your claims today read "Y equals H or COOM. R equals H or $CH_3$"?  Haven't you been doing that since the latter part of 2002?

    A.    Not to my knowledge the word has appeared.  That's not saying it doesn't. That's not news to me.  I mean, I'm a chemist.  I don't get hung up on "or" and what they mean legally.  I mean, I'm looking at it, and the modifications were made to make sure we were including what we felt were polycarboxylate cement dispersants that we knew were in the marketplace.

(*Id.*)  When asked how the variables were presented in a particular application, Mr. Vickers testified as follows:

    Q.    In fact, isn't it a fact that once the examiner in application serial number 732529 raised an objection about the way you were claiming it, comma, comma, comma, you abandoned that application and refiled it, and you put it in the correct *Markush* format, didn't you?

    A.    No, that's absolutely incorrect.

    Q.    What is correct?

    A.    The reason the thing was abandoned is we could not get it through the Patent Office because of some art that had been cited, and then when we tried to more carefully define what we meant by the polyether-based defoamer agent, the examiner said we were introducing new subject matter.  So, to my knowledge, it had nothing to do with the issue you're raising.  Okay.

(*Id.* at 94-95.)  As such, Defendant's argument that the later-filed applications and patents somehow prove that the claims at issue are indefinite is not new.

       This Court has again carefully considered the relevant law, evidence and argument set forth by the parties at the two-day Markman hearing, as well as the numerous briefs relevant to that hearing. The Court has likewise considered the law, evidence and argument set forth in the instant Motions and the briefs related to the Motions.  After a thorough review of those materials, the Court finds nothing to convince it that its previous ruling, that the disputed claim terms are open-ended and should be construed as such, is in error.

This case undoubtedly presents a difficult and unexplored area of law, as neither side is able to point this Court to a case that addresses whether the claim language at issue is an acceptable way to claim alternative limitations or, more generally, whether there are additional ways, other than the two referred to by Defendant, to claim alternative limitations.  In this matter, the Court has been charged with evaluating the validity of two approved patents, both of which are presumed to be valid.  As set forth above, the relevant law dictates that Defendant's burden is to prove invalidity by clear and convincing evidence.  Defendant asks this Court to draw an inference based on changed claim language in Plaintiffs' later-filed applications and patents, but it fails to present clear and convincing evidence as to the reason for that change in those applications and patents.  Although the change in claim language may suggest that Plaintiffs intended the relevant language to be "or terminology claims" in the patents-in-suit, the clear-and-convincing evidence standard of proof is a stringent one – the mere suggestion of invalidity is not sufficient.

The Court again finds that, based upon the record before it, Defendant has failed to present clear and convincing evidence that the claims at issue are indefinite.  The Court's previous determination that Plaintiffs' construction of the disputed claim terms is supported by the evidence, and adoption of Plaintiffs' claim construction language as its own, therefore remains intact.  Based upon the foregoing, the Motion for Summary Judgment is DENIED, and the Motion for Reconsideration is DENIED. (ECF # 45.)

-24-

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motions for Summary Judgment and

Reconsideration are DENIED.  (ECF # 45.)

       IT IS SO ORDERED.


                *s/ Donald C. Nugent*
                DONALD C. NUGENT
                United States District Judge

DATED: October 6, 2006